**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AMANDA LUCARINO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-2548 |
| | § | |
| | § | |
| CON-DIVE, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

**I.     Background**

Amanda Lucarino sued her former employer, Con-Dive, LLC, alleging unlawful discrimination on the basis of sex under Title VII, the Texas Commission on Human Rights Act, TEX. LABOR CODE § 21.000, *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206(d).  Her claims include unequal pay, retaliation, *quid pro quo* sexual harassment, and hostile work environment.  Lucarino also asserted a state common-law assault claim against her supervisor, R. Clay Etheridge, Con-Dive's Vice-President of International Business Development.[1]

In her complaint, Lucarino alleged detailed factual allegations about her treatment at Con-Dive.  She alleged that, over a period of several months in 2007, Etheridge frequently subjected her to unwanted touching on her shoulders and back, despite her protests.  She also alleged that Etheridge, who was married, repeatedly talked about planning a romantic trip to Paris with her, bought her gifts, and arranged for them to have adjoining rooms on a business trip.  Lucarino alleged

---

[1] Lucarino originally asserted her Title VII and Equal Pay Act claims against Etheridge.  She is now pursuing these claims only against Con-Dive.  (*See* Docket Entry No. 31).  The only claim she is asserting against Etheridge is the state common-law assault claim.  (*See* Docket Entry No. 28).

that after she refused Etheridge's advances, job responsibilities were taken away from her. Lucarino also made allegations about sexually inappropriate behavior by other Con-Dive employees, including advances and harassment. She alleged that Etheridge and others at Con-Dive failed to take appropriate remedial actions when she complained about these incidents. Lucarino's complaint included allegations that her pay was less than similarly situated male employees received.

Etheridge moved to dismiss the assault claim against him on two grounds. First, he moved to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. Because Lucarino and Etheridge are from the same state, the issue is supplemental jurisdiction. Etheridge argues that this court does not have supplemental jurisdiction over the assault claim, or, in the alternative, that this court should exercise its discretion to decline such jurisdiction. Second, Etheridge moved to dismiss under Rule 12(b)(6), arguing that Lucarino's pleadings on the assault claim are insufficient. (Docket Entry No. 22). Lucarino has responded, (Docket Entry No. 28), and Etheridge has replied, (Docket Entry No. 30).

Based on a careful review of the motion, response, and reply; the complaint; and the applicable law, this court denies the motion to dismiss on both grounds. The reasons are explained in detail below.

## II.    Supplemental Jurisdiction

### A.    The Legal Standard

As a general rule, when a district court's jurisdiction is based on a federal question, the court has supplemental jurisdiction "over all other claims that are so related to the claims in the action [providing the federal question] that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). "The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other

2

words, that they 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130 (1966)). This standard applies when the supplemental claims "involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a); *see also* 13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & RICHARD D. FREER, FEDERAL PRACTICE & PROCEDURE § 3567.1, at 365 (3d ed. 2008) ("The fact that the claim involves a party as to whom there is no claim that invokes an independent basis of subject matter jurisdiction is irrelevant.").

Courts are not required to exercise supplemental jurisdiction whenever section 1367(a) authorizes them to do so. Section 1367(c) gives a district court discretion to decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In deciding whether to exercise supplemental jurisdiction, a court is "guided by the statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

**B.     Analysis**

Etheridge argues that this court lacks supplemental jurisdiction under section 1367(a) because the state-law assault claim against him is not part of the same Article III case or controversy as the federal statutory employment claims against Con-Dive. Etheridge asserts that "the actionable conduct alleged is only incidental to and a small part of the federal claims, for which Etheridge could not be sued." (Docket Entry No. 30 at 4). Etheridge's argument is unpersuasive. Section

1367(a) is expansive, extending supplemental jurisdiction to its constitutional limit. The state-law claim and the federal law claim must arise from a "common nucleus of operative fact," *see Mendoza*, 532 F.3d at 346, but this does not mean that all of the facts applicable to the federal claim must also apply to the state claim. Section 1367(a) is generally satisfied by a "loose factual connection" between the two claims. *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995); *CVPArtners Inc. v. Boben*, No. C 09-689 SI, 2009 WL 1331108 (N.D. Cal. May 13, 2009); *see also* 13D WRIGHT, MILLER, COOPER & FREER § 3567.1, at 349.

In *Ammerman*, 54 F.3d at 423-25, the Seventh Circuit held that section 1367(a) was satisfied by facts similar to those present here. In that case, the plaintiff sued her employer and a coworker under Title VII and under state tort law for intentional infliction of emotional distress. She also sued the employer under the Equal Pay Act and asserted state-law tort claims against the coworker for assault and battery. All the claims arose out of an alleged sexual assault by Sween and the employer's failure to respond appropriately. *Id.* at 423. The district court dismissed several of the claims before trial, leaving only the Title VII sexual harassment claim against the employer and the assault and battery claims against Sween. On appeal, the coworker challenged the district court's decision to retain jurisdiction over the assault and battery claims against him, arguing that they were not so related to the federal claims as to be part of the same case or controversy under section 1367(a). *Id.* The Seventh Circuit rejected the argument. The Title VII issue was whether the employer had taken appropriate remedial action in response to the alleged sexual harassment. The factual allegations of the assault were "highly relevant" to the determination of whether the employer took appropriate remedial action. And there would have been no sexual harassment claim "without reference to the facts surrounding the assault." *Id.* at 425.

Similarly, in this case, the allegations in the complaint make clear that Etheridge's conduct is closely connected to Lucarino's Title VII claims. The factual allegations about the incidents of physical touching by Etheridge that are the basis for the assault claim against him are highly relevant to Lucarino's Title VII claims of *quid pro quo* sexual harassment and hostile work environment. The presence of other allegations in support of the federal claims does not deprive this court of the authority to exercise jurisdiction over the assault claim under section 1367(a). As pleaded, the assault claim and the federal claims share a common nucleus of operative facts such that the two claims "form part of the same case or controversy." *See* 28 U.S.C. § 1367(a).

Etheridge also argues that this court should use the discretion provided under 28 U.S.C. § 1367(c) to decline to exercise supplemental jurisdiction over the assault claim. It is appropriate to decline jurisdiction under section 1367(c)(1) if the state-law claim raises a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1). "Generally, state tort claims are not considered novel or complex." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743-44 (11th Cir. 2006); *see also* 13D WRIGHT, MILLER, COOPER & FREER § 3567.3, at 417 ("As a general matter, common law contract and tort claims do not present novel or complex questions of state law."). Section 1367(c)(1) does not provide a basis for declining to exercise jurisdiction in this case.

A court may decline to exercise jurisdiction "in exceptional circumstances," if there are "compelling reasons." 28 U.S.C. § 1367(c)(4). This provision, is narrow because "a broad reading . . .would threaten to swallow the first three subsections of § 1367(c)." 13D WRIGHT, MILLER, COOPER & FREER § 3567.3, at 452-53. To decline jurisdiction on this basis, there must be "truly compelling circumstances that militate against exercising jurisdiction." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215 (2d Cir. 2004). Etheridge argues that it would be confusing to a jury to have

5

to decide all the claims and to divide any damages between Con-Dive and Etheridge. This is neither unusual nor a compelling basis for declining to exercise supplemental jurisdiction. It is not unusual for a jury to decide federal-law employment claims against an employer with tort claims against individual employees. And it is common for juries to apportion damages between or among defendants.

Cases in which courts find "exceptional circumstances" involve much more serious concerns. In *Hays County Guardian v. Supple*, 969 F.2d 111, 124 (5th Cir. 1992), for example, the district court remanded, on Eleventh Amendment grounds, the plaintiff's claims against state officials in their official capacities. With those claims remanded, the district court decided not to exercise jurisdiction over the claims against the defendants in their individual capacities, for which there was no Eleventh Amendment bar. The Fifth Circuit affirmed, finding "exceptional circumstances" and "compelling reasons for declining jurisdiction" over state-law claims while identical claims, differing only in the capacity in which the defendants were sued, were proceeding in state court. Such duplicative litigation "would be a pointless waste of judicial resources." *Id.* at 125. As another example, in *Gauthereaux v. Baylor University Medical Center*, 876 F. Supp. 847, 849 (N.D. Tex. 1994), the court found exceptional circumstances and declined to exercise jurisdiction over a state-law claim after it had determined that the plaintiff was not entitled to a jury on her federal claim. The court found that "trying both the state and federal claims before a jury, but limiting the jury's consideration to only the state law claim would likely hinder the pursuit of justice and result in confusion." *Id.* at 849. In addition to that confusion, the court cited the need to make "preliminary rulings on virtually all of the evidence in order to determine what evidence applies to which claim," which "would greatly impede the efficiency of the Court." *Id.* In both of these cases,

6

there was a structural problem that made it extremely difficult to try the federal and state-law claims together in the federal court. No such problem is present here.

Finally, the purpose behind supplemental jurisdiction favors retaining the assault claim. *See Brookshire Bros. Holding*, 554 F.3d at 602 (instructing courts to consider "judicial economy, convenience, fairness, and comity."). Judicial economy will be served by trying all of the claims together. There is significant overlap between the discovery and evidence on the federal and state-law claims. Evidence about the relationship between Etheridge and Lucarino is relevant to the Title VII claims based on *quid pro quo* sexual harassment and hostile work environment. Fairness also favors supplemental jurisdiction; Lucarino need not decide between filing a second lawsuit in state court or foregoing her assault claim against Etheridge. And Etheridge has made no showing that it would be unfair to try the assault claim in federal court. Comity is not at issue; this is not a case in which the federal "tail" is wagging a state "dog." *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995).

Etheridge's motion to dismiss based under Rule 12(b)(1) is denied.

### III.    The Rule 12(b)(6) Motion

####    A.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure

to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63 ("*Conley's* 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1974).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court set out a procedure for evaluating whether a complaint should be dismissed:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1950. This procedure requires the court to engage in a two-step analysis. First, the court should identify which statements in the complaint are factual allegations and which are legal conclusions. *See Iqbal*, 129 S. Ct. at 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555). Second, the court must assume the truth of all factual allegations and determine whether those factual allegations allege a plausible claim. *See id.*

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action

with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile." (footnote omitted)).

   **B.**  **Analysis**

Etheridge argues that Lucarino has not sufficiently pleaded her assault claim. Etheridge argues that "the allegations of his conduct towards plaintiff are conclusory and speculative, and do not give Etheridge fair notice of the grounds on which she is suing him." (Docket Entry No. 22 at 8). The elements of Lucarino's assault claim are that Etheridge: (1) intentionally or knowingly caused physical contact with Lucarino; and (2) knew or reasonably should have believed that Lucarino would regard the contact as offensive or provocative. TEX. PENAL CODE § 22.01(a)(3).

Lucarino's factual allegations as to both elements give Etheridge fair notice of the claim against him and of the grounds on which it rests. Lucarino alleged that, between May 2007 and

9

September 2007, Lucarino "was subjected to frequent unwanted touching by Etheridge." (Docket Entry No. 1, ¶ 62). She further alleged that the "touching included Etheridge rubbing [her] shoulders or back, hugging [her], and touching [her] on her arm, shoulder and back, including her low back." (*Id.*, ¶ 63). Lucarino also alleged that Etheridge would come to her office "several times a day," "stand close to [her] to talk or look over [her] shoulder," and "frequently touch [Lucarino] on her shoulder or arm." (*Id.*, ¶¶ 71-73). As to the second element of assault, Lucarino alleged that she "told Etheridge that unwanted touching was not welcomed and that [she] did not want Etheridge to touch her in that manner." (*Id.*, ¶ 64). These are not conclusory allegations. The section of the complaint titled "PERSONAL INJURY - ASSAULT" makes clear that the assault claim is asserted against Etheridge only, based on his conduct between May 2007 and September 2007. (*Id.*, ¶¶ 252-64). The requirements of Rule 8(a) are satisfied.

Etheridge's Rule 12(b)(6) motion is denied.

**IV.   Conclusion**

The motion to dismiss is denied.

SIGNED on March 5, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge